# Richmond

IDA CARDEN ROGERS V. W. J. ROGERS.

April 28, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Warren L. Tiller,* for the appellant.

*Early & Hoy,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

This appeal brings under review the record of a suit in which it appears that the trial judge denied a divorce to complainant below, who is appellant in this court.

Appellant's first contention is that she is entitled, on the evidence, to a decree of divorce from her husband. The record shows that only two witnesess testified to any material acts of cruelty, and that these cruel acts were confined to two occasions; one on October 8, 1926, and the other on Mother's day, 1935. It appears from the testimony of all the witnesses, including those introduced by appellant, that the parties lived happily as husband and wife in Phenix, Charlotte county, from 1915, the year of the marriage, until October 8, 1926; that, on that date, appellant left the home of her husband, lived with her sister for a short time, and later moved to Richmond, where she was employed as a practical nurse; that during the nine year interval she and her husband were on good terms, she visited their home in Phenix frequently, sometimes staying as long as a month. During these periods they lived together as man and wife.

This bill was filed at November Rules, 1931. No evidence was taken in the case until December 4, 1935. Just

prior to the institution of the suit, matrimonial relations were severed, but soon after that date they were resumed, although suit was still pending.

Mrs. Rogers testified that on October 8, 1926, her husband, while drunk, cursed and threatened to shoot her. She became so frightened that she felt compelled to leave their home during the night. The only corroboration of this evidence is the testimony of R. C. Harvey, who said that Mrs. Rogers, during the early part of the night, came over to his residence and told him that her husband had run her away from home. At her request he took her to her sister's, and the next day went back to Mrs. Rogers' home and got some of her "stuff" for her. While Mrs. Rogers never thereafter permanently lived with her husband, a few days after the occurrence marital relations were resumed, and she seemed satisfied to seek employment elsewhere and occasionally visit her husband.

The husband denied that he cursed, abused, or made any threats against his wife on this occasion. He stated that his wife was high-tempered and without cause became jealous of other women; that he went to see her and begged her to come back and live with him; that she declined to live in his home unless he would make a deed of it to her, which he declined to do.

On Mother's Day in 1935, Mrs. Rogers with Ray K. Garrison drove from Richmond to Phenix. Garrison and Mrs. Rogers testified that while at Mr. Rogers' home he cursed her and told her to take her "Things" out of there and never come back, and threatened to shoot her. This evidence was contradicted by Mr. and Mrs. Gregory and Mr. Rogers. The acts of Mrs. Rogers on the following week-end corroborated the testimony of Mr. Rogers and his witnesses. While she stated that the abuse of her on this occasion so humiliated and frightened her that she determined never to visit her husband again, she finally admitted that sometime during that week she wrote him to meet her at Drake's Branch. Her husband did meet her there and spent Saturday night with her. Other witnesses testified that the attitude of the hus-

band and wife towards each other on this occasion was very cordial and affectionate. It seems unreasonable to believe that, if her husband has cursed, abused, and threatened to kill her, just a week previous to this occasion, she would have sought to return to him and resume the marital relations as she did.

The record contains some reference to the fact that Mr. Rogers drank, and occasionally drank to excess. His wife knew these habits when she married him, and they appeared to become no worse during the eleven years she lived with him. No witness, other than Mr. Garrison (a synopsis of whose testimony has heretofore been related), said that Mr. Rogers, even while intoxicated, ever cursed or abused his wife. In the argument it was stated that the citizens of Phenix knew other facts detrimental to Mr. Rogers and his treatment of his wife, but that for some reason they would not testify against him. Eleven or more citizens of Charlotte were called as witnesses by Mrs. Rogers. Several of them had lived in the house with the parties to this suit, others had known them for more than twenty years. The testimony of none of these witnesses corroborates Mrs. Rogers' testimony as to her husband's treatment of her.

On the 20th of March, 1937, appellant filed a supplemental and amended bill, in which it was alleged that the husband and wife had jointly bought a house and lot in Phenix, and that the husband, unknown to the wife, had been named as the sole grantee to the deed conveying the property. Appellee filed a demurrer to the bill, which was not passed upon by the court until all the evidence had been taken. In the final decree disposing of the case on its merits, the trial judge sustained the demurrer to the bill on the ground that a resulting trust in favor of a wife could not be determined in a suit for divorce. This ruling constitutes the second assignment of error.

The question raised, but not developed, in the briefs is whether in a suit for divorce, the court has jurisdiction to decide any property rights between a husband and wife

other than such property rights as are imposed upon the marriage contract by operation of law.

The usual mode of procedure requires the court to decide any legal questions raised by the pleadings before considering the case on its merits, but, in this case, the testimony of the litigants on the subject of divorce is so intermingled with the question of ownership of the house and lot in Phenix that it is impractical to consider the evidence on one question without considering it on the other. As stated, the question of jurisdiction was not fully developed in the brief of either party. For these reasons we do not think it necessary to pass on the question raised by the demurrer.

If we accept the testimony of appellant as true, it does not establish a contract, verbal or written, with her husband. She stated that she urged her husband to buy the property as a home for them, and that, after he bought it, she thought it was a fifty-fifty proposition, but when questioned by her own counsel, she gave the following answers:

"Q. Did he ever tell you that it was his understanding that it would be a fifty-fifty proposition?

"A. I thought it until after I saw he was beginning to change with me, and then at times he would get to talking and tell me it was his home, he met the last payment on it.

"Q. What I am asking you is before you found out that the deed was not in your name and while you were taking boarders, why is it that you were under the impression that it was a fifty-fifty proposition; did he ever say anything to you to indicate that it was a fifty-fifty proposition between you and him?

"A. No, he never said anything."

After Mrs. Rogers had been using the property for some time as a boarding house, she decided to enlarge it. With the consent of her husband, she made and paid for some additions. Thereafter appellant retained as her separate estate all profits accruing from her use of the premises as a boarding house. Subsequently she determined that the operating of a boarding house was not profitable; thereupon, and for a period of several years, the property was

rented for thirty-five dollars per month. All of the rent money, except for one month, was paid to and used by appellant.

The bone of contention between the parties seems to have arisen over the ownership of this property. It is conceded that the husband paid the purchase price, and the wife paid for the additions and repairs, without any agreement between the parties that the husband should convey her any interest in the property or repay her for the money expended for additions. So long as the parties lived together, the wife, with the consent of the husband, used for purposes of her own all profits accruing from the use of the property as a boarding house and practically all sums collected as rent from the lease of the property. Under these circumstances no resulting trust has been established.

The wife testified that she would not return to her husband's home and live with him in Phenix unless he conveyed the property to her. The husband testified that he had repeatedly requested his wife to return to his home in Phenix and live with him, stating that the residence had been leased with her consent to Mr. and Mrs. W. S. Gregory, but that, until the lease expired, they could live in the smaller two-room house standing on the lot, and that when the lease was terminated, if she desired, they could move into their former residence.

On consideration of the entire record, it is apparent that the wife has failed to prove that her husband deserted her or that he was cruel to her. Even if these facts had been established, she has condoned the acts by voluntarily resuming cohabitation. She offers no explanation of this condonation, except to say that she thinks she ought to be the fee simple owner of the house and lot. She has not established a contractual right to the property, and she has failed to show facts and circumstances from which the law will impose a resulting trust in her favor.

For the reasons stated the decree, from which the appeal was allowed, is affirmed.

*Affirmed.*